**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

DARRELL D. DOUGLAS, )
)
        Plaintiff, ) **CIVIL ACTION**
)
v. ) No. 08-1372-MLB
)
JASON REDDY and INDEPENDENCE, )
KANSAS, )
)
        Defendants. )
_____)

**MEMORANDUM AND ORDER**

This case comes before the court on the following motions:

1. Plaintiff's motion for summary judgment on the issue of liability (Doc. 57), plaintiff's memorandum in support (Doc. 59) and defendants' response (Doc. 70); and

2. Defendants' motion for summary judgment (Doc. 60), defendants' memorandum in support (Doc. 62), plaintiff's response (Doc. 68) and defendants' reply (Doc. 72).[1]

**I.    Facts[2]**

    **A. Douglas' Arrest**

---

[1] Defendants have also filed a motion to exclude the expert testimony of Ted Leach. (Doc. 66). The court did not consider Leach's testimony while ruling on the present motions. The court will schedule a <u>Daubert</u> hearing, if necessary, and rule on the motion at a later date.

[2] Generally, the court recites the uncontroverted facts and views all other facts in favor of the non-moving party in this section. In this case, however, both parties have moved for summary judgment. Therefore, the court will recite the uncontroverted facts and then discuss additional but disputed facts throughout the analysis.
    It has been this court's experience that when both parties seek summary judgment on non-stipulated facts, summary judgment is never appropriate. This is especially true in excessive force cases.

Plaintiff Darrell Douglas resides in Independence, Kansas, with Sharon Vaughn. Defendant Jason Reddy works as a police officer for the Independence Police Department. Reddy began his employment as an officer in January 2006. In the evening of June 8, 2007, Reddy was dispatched to Sharon Vaughn's residence at 124 North 24th. Vaughn told Reddy that plaintiff had taken Vaughn's 1999 GMC truck without permission. Vaughn did not want to report the truck stolen but just wanted her truck returned. Vaughn requested that the police locate the truck and call her so that she could retrieve it.

Vaughn stated that plaintiff had been drinking and that there was an altercation between her and plaintiff. She said that plaintiff put his hands on her neck because he was upset. Reddy examined Vaughn and did not see any signs of abuse. Vaughn also told Reddy that plaintiff did not have a driver's license. Reddy did not verify whether Vaughn's statement regarding plaintiff's driver's license was accurate.

At approximately 3:00 a.m. in the morning on June 9, Reddy observed the truck at 10th and Main streets while he was talking with another officer. The truck had a camper attached on the bed. Reddy turned to follow the truck and notified dispatch of his actions. Reddy sped to catch up to plaintiff and then followed him for ten blocks before activating his lights at 22nd and Main. Reddy did not observe any deviant driving behavior or check plaintiff's speed with a radar gun. Reddy testified that he was attempting to stop plaintiff for the following violations of Kansas law: driving while his license was suspended; driving under the influence of alcohol; possession of narcotics; battery; and, deprivation of personal property. (Reddy

Depo. at 116-18). Reddy, however, did not observe any indication that plaintiff was driving while intoxicated. (Id. at 59).

Plaintiff did not stop the truck until arriving at his residence. The residence is located on 24th Street, the next street following 22nd[3], which intersected with Main. Plaintiff parked in the driveway, exited the truck and then came towards the patrol car.[4] Reddy immediately pulled out his Taser, turned it on and pointed it at plaintiff. Reddy told plaintiff to stop and he complied. Plaintiff was standing at the back of the truck. Reddy told plaintiff to go to the patrol car and put his hands on the hood. Plaintiff looked at Reddy but did not comply. Plaintiff then stood next to the truck and placed his hands against it with his legs spread. Reddy did not observe any weapons on plaintiff. Reddy observed that plaintiff had white hair. Plaintiff did not say anything aggressive to Reddy. Reddy testified that he continued to tell plaintiff to place his hands on the police car and plaintiff did not comply.[5] Reddy did not advise plaintiff that he was under arrest.

Plaintiff then moved from the back of the truck and started in

---

[3] There is no 23rd Street.

[4] Reddy has described plaintiff's approach as "walking swiftly," "a pretty quick pace," "charged" and "baled." (Docs. 59 at ¶ 27; 70 at 6).

[5] Both Reddy and plaintiff give a different sequence of events. Reddy states that plaintiff did not comply after repeated requests. Plaintiff testified that he attempted to comply by moving towards the patrol car and Reddy told him to stop after each attempt. Plaintiff further testified that he told Reddy to come and arrest him but that Reddy failed to do so. Reddy characterized this statement as aggressive and stated that plaintiff said "you come over here." (Doc. 59, exh. 9).

-3-

the direction of the house.[6] Reddy activated the Taser and struck plaintiff. Plaintiff fell and landed on the concrete. Plaintiff suffered injuries as a result of the fall.

**B. Reddy's Training**

Reddy completed the 14 week police academy with the Kansas Law Enforcement Training Center in April 2006. Some time in 2006, Reddy received Taser training that lasted from four to six hours.[7] The training included review of a video and Power Point presentation provided by Taser International which included scenarios and demonstrations of when use of the Taser is appropriate. Reddy also went through a Taser recertification program every year which consisted of a power point presentation, identification of the key parts of the Taser, and review of the Independence Police Department (IPD) policies. This review focused on the mechanical functions of the Taser and did not discuss the appropriate situations in which to use the Taser.

The IPD policy on use of force states the following:

> The use of the Taser is discretionary based on an officers assessment of the situation. Under no circumstances is the use of a Taser authorized in a

---

[6] Plaintiff testified that he was returning the truck keys to Dustin Vaughn who was standing inside of the house watching. Plaintiff further testified that he told Reddy what he was doing and said that he would be back so that Reddy could arrest him.

[7] Taser is the brand name for the electronic control device employed by the Independence Police Department. It is designed to incapacitate a person from a safe distance reducing the likelihood of serious injuries or death. The Taser uses propelled wires or direct contact (drive stun method) to affect the sensory and motor functions of the nervous system. The electrical charge causes involuntary muscle paralysis. The electric charge lasts for a maximum of 5 seconds. After the charge has expired the Taser has no effect on the individual.

> punitive or coercive manner. The totality of the circumstances including a subject's age, mental condition and ability to cause injury, must all be considered based on the information available, (or reasonable belief of circumstances presented) to the officer. Only officers that have been certified to use the device may deploy it. . . . The Taser is a non lethal device that is designed to gain compliance over a combative subject or a subject who is believed to be a danger to themselves, the public, or officers. The Taser is to be used only when the appropriate level of force is necessary to warrant use of the device and after lesser available options have been utilized, (when appropriate). The use of the Taser is authorized when immediate escalation of force is warranted, necessary and justified. Officers shall only use the necessary amount of force to safely gain compliance of a subject to minimize the risk of injury. Once a subject has complied or is secure, use of the Taser is no longer warranted or authorized.

(Doc. 62, exh. 12).

Plaintiff filed this action against both Reddy and the city of Independence, Kansas. Plaintiff alleges that Reddy has violated his Fourth Amendment rights to be free from excessive force and that Independence is liable for Reddy's conduct because his training was inadequate. Defendants move for summary judgment on the basis that Reddy is entitled to qualified immunity because his conduct was reasonable.

**II.  Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is

-5-

"material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Where, as here, the parties file cross motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. James Barlow Family Ltd. P'ship v. David M. Munson, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997) (citing Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981)).

## III. Analysis

When law enforcement officers abuse their power, suits against them allow those wronged an effective method of redress. See Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citing Harlowe v. Fitzgerald, 457 U.S. 800, 814 (1982)). Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of

power.  While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995).  To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law.  See Am. Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  There is no dispute that Reddy was acting under color of state law.

**A.  Qualified Immunity**

While section 1983 permits the possible vindication of a plaintiff's rights, non-meritorious suits exact a high cost upon society and law enforcement personnel.  See Anderson, 483 U.S. at 638. Indeed, the Supreme Court and the Tenth Circuit have recognized these suits may unduly interfere with the discharge of discretionary duties due to the constant fear civil litigation and potential monetary damages.  See Harlowe v. Fitzgerald, 457 U.S. 800, 814 (1982); Wilson v. Stock, 52 F.3d 1547, 1552 (10th Cir. 1995). "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."  Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1277 (10th Cir. 1998) (internal quotations omitted) (citing Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)).

In order to balance these competing interests, government officials performing discretionary duties are afforded qualified

immunity shielding them from civil damages liability. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009). Qualified immunity protects these officials unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well.[8] See Horstkoetter, 159 F.3d at 1277.

When a defendant claims qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a constitutional right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. Pearson, 129 S. Ct. at 815-6. As noted in Pearson, courts are no longer required to follow the two-step sequence mandated by Saucier v. Katz, 533 U.S. 194 (2001). Id. at 818. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

If a plaintiff successfully thwarts a defendant's qualified immunity defense, the ordinary summary judgment burden returns to the defendant to show no material issues of fact remain that would defeat the claim of qualified immunity. See Mick v. Brewer, 76 F.3d 1127,

---

[8] One of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be peculiarly disruptive of effective government." Anderson, 483 U.S. at 646 n.6.

1134 (10th Cir. 1996). This standard requires a defendant to show there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time. See id. Even if a plaintiff is able to withstand summary judgment, the defendant is nonetheless able to reassert the defense of qualified immunity at trial. See Gossett v. Oklahoma Bd. of Regents for Langston University, 245 F.3d 1172, 1181 n.5 (10th Cir. 2001).

### 1. Violation of Constitutional Right

To determine whether plaintiff has sufficiently shown the violation of a constitutional right at all, this court must determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right. See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)). Determining whether a plaintiff has stated a claim for a constitutional violation is purely a legal question.[9] See id. Despite the inevitable factual issues that become intertwined in the characterization of a plaintiff's precise constitutional claims, this court cannot avoid the legal issue by simply framing it as a factual question. See Archer v. Sanchez, 933 F.2d 1526, 1530 n.7 (10th Cir. 1991).

Both parties argue extensively, and unnecessarily, about the initial stop and what standard should be used. Plaintiff, however, concedes that it is plausible to find that Reddy was making the stop

---

[9] Similarly, whether the right was clearly established at the time the incident occurred is also a legal question. See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)).

based on reasonable suspicion.[10] "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989). The degree of physical coercion that law enforcement officers may use is not unlimited, however, and " all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." Id. at 395, 109 S. Ct. 1865.

> To determine whether the force used in a particular case is excessive "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989) (internal quotation marks omitted). The ultimate question "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." Id. at 397, 109 S. Ct. 1865 (internal quotations marks omitted). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396, 109 S. Ct. 1865.

Casey v. City of Federal Heights, 509 F.3d 1278, 1281 (10th Cir. 2007); see also Dixon v. Richer, 922 F. 2d 1456, 1462 (10th Cir. 1991).

In Casey, the plaintiff was at the Federal Heights courthouse disputing a traffic ticket. He had his case file in his hands and

---

[10] Reddy testified that he believed that he had reasonable suspicion to stop plaintiff for deprivation of personal property. Clearly, he did. Reddy, however, did not testify that he intended to arrest plaintiff at the time of the stop or at any time thereafter.

-10-

left the building to get money out of his truck. A clerk informed an officer that the plaintiff had removed the file from the building. An officer then confronted the plaintiff outside and told him to return to his truck. The plaintiff stated that he needed to return the file and go inside where his daughter was waiting. The officer grabbed the plaintiff and put him in an arm-lock. The plaintiff asked the officer what he was doing. The officer did not tell the plaintiff he was under arrest and never advised him to stop resisting. Another officer arrived and fired a taser shortly after seeing the struggle.

While this case is not factually similar to Casey, there are similar aspects. Like the plaintiff in Casey, plaintiff was not being followed for a serious crime and was actually attempting to return the property that he took at the time he was struck with the Taser. Notably, Reddy did not observe plaintiff violating any traffic laws. Moreover, Vaughn's statement to Reddy that plaintiff was drinking and/or on drugs was given in the early evening and plaintiff's stop occurred at 3 o'clock in the morning.

Similar to Casey, there is also no evidence that plaintiff posed a threat to Reddy. Vaughn did not tell Reddy that plaintiff had, or even may have, a weapon. Plaintiff did not have any observable weapons and, according to his testimony, did not act aggressively. Plaintiff never raised his voice or spoke in a threatening manner. Defendants' insistence that the force used was reasonable in light of plaintiff being present on "his turf," looking at Reddy with a "hundred mile stare" and his quick walk do not firmly support a conclusion that plaintiff was a threat. Reddy testified that when he asked plaintiff to stop, plaintiff complied.

-11-

Finally, the court must evaluate whether plaintiff was resisting arrest or attempting to flee from arrest. Similar to the plaintiff in Casey, plaintiff was never told that he was under arrest nor was he informed of the reason for the stop. Plaintiff testified that he attempted to conform to Reddy's request to move to the patrol car but was then told to stop. Plaintiff further testified that he told Reddy to come arrest him and when Reddy did not do so, plaintiff said he was going to give the truck keys back and then return.

Defendants have cited several cases to support the conclusion that the force used by Reddy was reasonable. Those cases, however, are clearly distinguishable from this case. Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004)("Draper was hostile, belligerent, and uncooperative. . . . Draper used profanity, moved around and paced in agitation, and repeatedly yelled at Reynolds. . . . Draper repeatedly refused to comply with Reynolds's verbal commands, starting with a verbal arrest command was not required in these particular factual circumstances."); Gruver v. Borough of Carlisle, No. 05-1206, 2006 WL 1410816, * 5 (M.D. Pa. May 19, 2006)("Plaintiff struggled against the Officers for several minutes in their attempt to restrain him, and only became subdued once he was tasered."); Armbruster v. Marguccio, 2006 WL 3488969 (W.D. Pa. Dec. 4, 2006)(the plaintiff repeatedly re-entered his vehicle and attempted to flee the police but the court found that a factual issue existed as to the first use of the taser after the plaintiff denied that he was thrashing around after being handcuffed); Wylie v. Overby, 2006 WL 1007643 (E.D. Mich. April 14, 2005)(the use of a taser was found to be reasonable after plaintiff, being held in a patrol car on suspicion of stolen property, pushed

past the officer out of the patrol car, took three steps away from the car, turned and raised his hands).

There are several factual disputes in this case concerning plaintiff and Reddy's conduct. Notably, the memoranda and exhibits submitted for review span several hundred pages. Viewed in the light most favorable to plaintiff, the court believes that a jury could find that Reddy's conduct was not reasonable. On the other hand, the court cannot grant summary judgment for plaintiff on the issue of liability. Viewed in a light favorable to defendants, a jury could also find that Reddy's conduct was reasonable. There is a clear and genuine dispute of material fact regarding what occurred and whether Reddy's actions did, or did not, amount to use of excessive force.

**2.  Clearly Established Constitutional Right**

The court must next determine whether the right at issue was sufficiently clear that Reddy would have understood that his conduct violated a constitutional right that was clearly established at the time the alleged acts took place. See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996). This standard, however, must be used in a particularized manner[11] because "[o]n a very general level, all constitutional rights are clearly established." Horstkoetter, 159 F.3d at 1278. Were this level of particularity not

---

[11]   The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995); see also Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998).

required, Harlowe "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" Anderson, 483 U.S. at 639-40 (quoting Davis v. Scherer, 468 U.S. 183, 195 (1984)).

In cases of excessive force, the Tenth Circuit has held that a sliding scale approach is to be used in determining when the law is clearly established. Casey, 509 F.3d at 1284. "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation. Thus, when an officer's violation of the Fourth Amendment is particularly clear from Graham itself, we do not require a second decision with greater specificity to clearly establish the law." Id. (internal citations omitted).

In this case, Reddy, at most, had probable cause to arrest plaintiff for deprivation of personal property. That crime is not a serious crime and, more importantly, at the time of the stop plaintiff had returned the truck back to the residence of its owner. As in Casey, the crime is a misdemeanor and plaintiff was attempting to return the property. Viewing the facts in a light favorable to plaintiff, plaintiff was not a threat to anyone's safety.

Defendants, however, also point to the other alleged crimes that plaintiff committed. Reddy, however, had no probable cause to arrest plaintiff for any other crime and, as such, Reddy should have known that he was permitted to use "only as much force as was necessary to secure their own safety and maintain the status quo." Cortez v.

-14-

McCauley, 478 F.3d 1108, 1126 (10th 2007). At the time Reddy used the Taser, plaintiff was not a threat to anyone. "[O]fficers are required to articulate specific justifications for uses of force during an investigative detention." Id.

The court finds that the facts, as viewed in the light most favorable to plaintiff, show that Reddy's conduct was in violation of Graham. Casey, 509 F.3d at 1284. Defendants' motion for summary judgment on plaintiff's section 1983 claim of excessive force is therefore denied. (Doc. 60). Also, given the factual disputes present in this case, plaintiff's motion for summary judgment on the issue of liability is denied. (Doc. 57).

**B. Liability of the City**

Defendant City of Independence (city) argues that it is not liable for Reddy's alleged violation of plaintiff's rights. Reddy counters that the city is liable because it failed to properly train Reddy on when it is appropriate to use the Taser.

> The inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

Allen v. Muskogee, Okl., 119 F.3d 837, 841-42 (10th Cir. 1997).

The first element has been met as the court determined that a reasonable jury could find that Reddy's force was excessive. "As

-15-

regards the second and third requirements, a showing of specific incidents which establish a pattern of constitutional violations is not necessary to put the City on notice that its training program is inadequate. Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." Id. It is very common for officers to be confronted with individuals who retreat after being asked to remain in one place. Therefore, the second element has been met as this situation would frequently occur. See id. ("city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons.")

As to the third element, the city states that plaintiff must have an expert to testify as to the training's inadequacies. The cited authority, however, does not support that conclusion. In Lewis v. Board of Sedgwick County Com'rs, 140 F. Supp.2d 1125, 1136 (D. Kan. 2001), the court stated that "expert testimony may be required to establish the inadequacy of the county's training" when the claim is based on only one incidence of excessive force. (Emphasis supplied). Importantly, in support of the conclusion that the city provided adequate training, the city merely cites to Reddy's positive response to a question that the training included videos which discussed situations in which it was proper to use the Taser. The city, however, failed to provide that video to the court and has failed to detail exactly what training was provided to Reddy. Moreover, the recertification of the Taser did not include any specific instances

-16-

in which its use is allowed.

As plaintiff has pointed out, IPD policy allows the use to be <u>discretionary</u>. The policy does not set forth any situations in which the taser is permissible nor does it prohibit use in other situations. As such, the court finds that plaintiff has presented a genuine issue of material fact on this issue. The city has armed the officers with Tasers and the court believes that it is then required to train them to use the Tasers in accordance with Constitutional principals. See Allen, 119 F.3d at 842.

As to the fourth element, the court also finds that there is a genuine dispute as to whether a causal link exists between the deprivation of training and the violation of plaintiff's rights. A reasonable jury could reasonably conclude that a link does in fact exist.

The city's motion for summary judgment on plaintiff's failure to train claim is denied.

**IV. Conclusion**

Plaintiff's motion for summary judgment on the issue of liability is denied. (Doc. 57). Defendants' motion for summary judgment is denied. (Doc. 60). The clerk is ordered to set this case for trial.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider

and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>  21st  </u> day of January 2010, at Wichita, Kansas.

<u>s/ Monti Belot                </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE